# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PARKER LIVESTOCK, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-518-R |
| | ) |
| OKLAHOMA CITY NATIONAL | ) |
| STOCK YARDS COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff, Parker Livestock, LLC's Amended Motion for Partial Summary Judgment. Doc. No. 56. Defendant Oklahoma National Stock Yards ("ONSY") has responded in opposition to the motion. Doc. No. 58. Having considered the parties' submissions, the Court grants the motion in part and denies it in part.

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine when a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014) (citations omitted). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Id.* at 712-13.

## Facts

ONSY leased a room to Plaintiff. Doc. No. 56, at 5; Doc. No. 58, at 4 (Undisputed Fact 1). The initial lease agreement was effective June 1, 2009 ("2009 lease"). Doc. No. 56, at 6; Doc. No. 58, at 4 (Undisputed Fact 4). The parties renewed the lease with a letter dated May 31, 2011 ("2011 letter"). Doc. No. 56, at 6; Doc. No. 58, at 4 (Undisputed Fact 5). The 2011 letter stated that "[a]ll provisions of lease dated June 1, 2009," applied to the agreement. Doc. No. 56, Ex. 2, at 2. The 2009 lease states that rent is "payable in monthly installments … in advance by the tenth (10th) day of each month." Doc. No. 56, Ex. 1, at 2, ¶ 3.

From June 2009 until January 2012, ONSY issued an invoice for rent due and Plaintiff paid it. Doc. No. 56, at 6; Doc. No. 58, at 5 (Undisputed Fact 9). According to Plaintiff, ONSY did not deliver an invoice in February 2012. Doc. No. 56, at 7 (Fact 10). On March 14, 2012, ONSY sent Plaintiff an invoice stating it was for "February Rent." Doc. No. 56, at 7; Doc. No. 58, at 5 (Undisputed Fact 13). The same day, Plaintiff mailed payment for the total amount of the invoice. Doc. No. 56, at 7; Doc. No. 58, at 5 (Undisputed Fact 14). On March 19, ONSY gave Plaintiff a letter immediately terminating the lease and requiring Plaintiff to remove its personal property from the rented room by March 23. Doc. No. 56, at 7; Doc. No. 58, at 5 (Undisputed Fact 15). ONSY subsequently removed Plaintiff's furniture from the room and rented it to another tenant. Doc. No. 56, at 7; Doc. No. 58, at 5 (Undisputed Fact 16).

## Analysis

Plaintiff asks the Court to find as a matter of law that Defendant ONSY 1) failed to demand payment and give a ten-day notice to quit required by Oklahoma law; 2) breached the lease by failing to give a thirty-day notice prior to eviction; and 3) failed to comply with the mandatory forcible entry and detainer ("FED") procedure required by Oklahoma statute. Doc. No. 56, at 16.

### A. Demand for Payment & Ten-Day Notice

Plaintiff argues that ONSY failed to demand payment and give a ten-day notice to quit. Doc. No. 56, at 11. Under the common law, a lessor generally must make a demand for payment of rent prior to enforcing a lease provision for termination upon nonpayment. *Black v. McLendon*, 308 P.2d 300, 301 (Okla. 1957). However, "the necessity of a demand for payment may be waived by express stipulation in the contract." *Id.* at 301-02. The lease states that if Plaintiff fails to pay rent when due, ONSY may, "without any notice or demand," immediately terminate the lease. Doc. No. 56, Ex. 1, at 3, ¶¶ 22-23.1. Because Plaintiff clearly waived any right to have ONSY demand payment of rent prior to termination of the lease, Plaintiff had no such right under the common law.

Plaintiff also directs the Court to an Oklahoma statute providing that if a tenant fails to pay rent when due for three months or more, the lessor must provide a ten-day written notice to quit before the lease is terminated, unless the lessee pays prior to the ten-day period expiring. OKLA. STAT. ANN. tit. 41, § 6 (West). Plaintiff argues that § 6 required ONSY to provide a ten-day notice prior to terminating the lease. Doc. No. 56, at 11. But just as the right to have the lessor demand payment of rent may be waived by

contract, so too may the right to a notice prior to termination of the lease for nonpayment of rent. *See Black*, 308 P.2d at 302 ("The lease in question quite clearly waives notice of election to forfeit and demand for possession."). Plaintiff waived this right in the lease. *See* Doc. No. 56, Ex. 1, at 3, ¶¶ 22-23.1 (authorizing ONSY to immediately terminate the lease "without any notice or demand"). Therefore, Plaintiff was not entitled to a ten-day notice under § 6.

### B. Thirty-Day Notice

Plaintiff next argues that ONSY breached the lease by failing to give a thirty-day notice prior to eviction. Doc. No. 56, at 11. It points to the 2011 letter that states, "This lease can be renewed on a year to year basis with a 30 day written notice and may be cancelled by either party with a 30 day written notification to the other party." *Id.* at 13, Ex. 2, at 2. Plaintiff contends that ONSY breached this provision when it sent Plaintiff a letter dated March 16, 2012, stating that Plaintiff had only one week to remove its belongings and move out of its leased office space. *See id.*, Ex. 7, at 2.

To prevail on its claim for breach of contract, Plaintiff must prove: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001) (footnote omitted). There is no dispute that a lease agreement existed between the parties. Doc. No. 56, at 5; Doc. No. 58, at 4 (Undisputed Fact 1). The parties do dispute whether ONSY breached that contract by not providing a thirty-day written notice prior to termination of the contract.

"A lease is a contract and in construing a lease, the usual rules for the interpretation of contractual writings apply." *Osprey L.L.C. v. Kelly-Moore Paint Co. Inc.*, 984 P.2d 194, 198 (Okla. 1999) (footnote omitted). "The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to determine and resolve." *Id.* (footnote omitted). "The courts will read the provisions of a contract in their entirety to give effect to the intention of the parties as ascertained from the four corners of the contract, and where the language is ambiguous, it will be interpreted in a fair and reasonable sense." *Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc.*, 160 P.3d 936, 946 (Okla. 2007) (citations omitted).

The 2011 letter, which "serve[s] as [the] agreement concerning the lease of suite number 106 of Oklahoma National Stockyard Exchange Building," provides that the lease "can be renewed on a year to year basis with a 30 day written notice and may be cancelled by either party with a 30 day written notification to the other party." Doc. No. 56, Ex. 2, at 2. It also states that "[a]ll provisions of lease dated June 1, 2009, will apply to this agreement." *Id.* The 2009 lease provides that, "[o]n occurrence of any event of default [including failing to pay rent when due], Stock Yards will have the option to do any one or more of the following [including terminate the lease] without any notice or demand, in addition to and not in limitation of any other remedy permitted by law or by this Lease." Doc. No. 58, Ex. 3, at 2, ¶ 22.

According to Plaintiff, the thirty-day written notification provided for by the 2011 letter limited ONSY's ability to immediately terminate the lease. Doc. No. 56, at 13. Because it is not clear whether the thirty-day written notification applies when the lessee

is in default, the Court finds the lease to be ambiguous in this regard. Applying a fair and reasonable reading to the document, however, leads the undersigned to conclude that the thirty-day notification language in the letter applies only when there has been no default by Plaintiff; if Plaintiff has defaulted, the terms of the 2009 lease apply, which permit immediate termination after nonpayment of rent when due. The undersigned relies on the following considerations in coming to this conclusion. First, the thirty-day notification language in the 2011 letter appears immediately after language describing the process for renewing the lease. Second, the letter does not discuss the issue of default. Finally, the letter states that all terms of the 2009 lease apply to the agreement. Because Plaintiff has not produced evidence establishing that it paid the rent due in February and March of 2012 in compliance with the terms of the lease, it could have been in default, and thus, not entitled to a thirty-day written notice. The Court declines to hold as a matter of law that ONSY breached the lease by terminating it without providing a thirty-day written notice.

### C. Forcible Entry and Detainer

Finally, Plaintiff argues that ONSY failed to comply with the mandatory FED procedure required by Oklahoma statute. Doc. No. 56, at 13-14. "It has long been the law in Oklahoma that a landlord may *not* resort to self-help to gain possession of realty, but must regain possession through an action at law." *Ramirez v. Baran*, 730 P.2d 515, 517 (Okla. 1986). Pursuant to Oklahoma statute, a party may bring an action for forcible entry and detainer as a "speedy means for recovering possession of real property." *Rogers v. Bailey*, 261 P.3d 1150, 1154 (Okla. 2011) (citation omitted). This statutory procedure is

the "*exclusive* procedure for ousting a hold-over tenant," regardless of whether the property is residential or commercial. *Ramirez*, 730 P.2d at 517 (citing OKLA. STAT. ANN. tit. 12, § 1148.1 *et seq.*). "[A] landlord may *not* resort to force to gain possession of a leased premise." *Id.*; *see also Case-Aimola Props., Inc. v. Thurman*, 752 P.2d 1120, 1122 (Okla. 1988) ("To find otherwise would be contrary to this Court's commitment to the precept that a landlord may not resort to self-help to gain possession of realty, but must regain possession through an action at law." (citations omitted)).

ONSY argues that the above authority on "self-help" is inapplicable in a case such as this, when there is a lease agreement in which the parties agreed that the lease may be immediately terminated if Plaintiff does not timely pay rent. Doc. No. 58, at 11-12. The only authority ONSY provides in support of its position is *Black v. McLendon*, 308 P.2d 300 (Okla. 1957). *Id.* at 12. In *Black*, the Supreme Court of Oklahoma noted that under the common law, a lessor must make a demand for payment prior to enforcing a lease provision providing for termination upon nonpayment of rent. *Black*, 308 P.2d at 301. But "the necessity of a demand for payment may be waived by express stipulation in the contract." *Id.* at 301-02. ONSY contends that *Black* "supports a finding that the terms of the contract prevail … for the handling of issues such as non-payment of rent." Doc. No. 58, at 12.

ONSY reads *Black* to stand for more than the Court finds that case to represent. Although this case does support the position that the necessity for a demand of payment may be waived by contract, such a waiver is different than waiving one's right against forcible entry. In *Ramirez v. Baran*, the Supreme Court of Oklahoma stated that "[t]he

the "*exclusive* procedure for ousting a hold-over tenant," regardless of whether the property is residential or commercial. *Ramirez*, 730 P.2d at 517 (citing OKLA. STAT. ANN. tit. 12, § 1148.1 *et seq.*). "[A] landlord may *not* resort to force to gain possession of a leased premise." *Id.*; *see also Case-Aimola Props., Inc. v. Thurman*, 752 P.2d 1120, 1122 (Okla. 1988) ("To find otherwise would be contrary to this Court's commitment to the precept that a landlord may not resort to self-help to gain possession of realty, but must regain possession through an action at law." (citations omitted)).

ONSY argues that the above authority on "self-help" is inapplicable in a case such as this, when there is a lease agreement in which the parties agreed that the lease may be immediately terminated if Plaintiff does not timely pay rent. Doc. No. 58, at 11-12. The only authority ONSY provides in support of its position is *Black v. McLendon*, 308 P.2d 300 (Okla. 1957). *Id.* at 12. In *Black*, the Supreme Court of Oklahoma noted that under the common law, a lessor must make a demand for payment prior to enforcing a lease provision providing for termination upon nonpayment of rent. *Black*, 308 P.2d at 301. But "the necessity of a demand for payment may be waived by express stipulation in the contract." *Id.* at 301-02. ONSY contends that *Black* "supports a finding that the terms of the contract prevail … for the handling of issues such as non-payment of rent." Doc. No. 58, at 12.

ONSY reads *Black* to stand for more than the Court finds that case to represent. Although this case does support the position that the necessity for a demand of payment may be waived by contract, such a waiver is different than waiving one's right against forcible entry. In *Ramirez v. Baran*, the Supreme Court of Oklahoma stated that "[t]he

termination of a lease is to be determined by the traditional principles of real property and contract law." 730 P.2d at 517 (footnote omitted). The court then explains that "statutory prescriptions regarding forcible entry and detainer provide the *exclusive* procedure for ousting a hold-over tenant." *Id.* Thus, the court distinguishes between the termination of a lease—governed by traditional principles of real property and contract law—and ousting a hold-over tenant—governed by statute. Although the terms of the lease may have justified ONSY in terminating the lease, under Oklahoma law, the lease cannot supplant the statutory procedure for regaining possession of the rented space.

ONSY admits to removing Plaintiff's furniture from the rented room. Doc. No. 56, at 7; Doc. No. 58, at 5 (Undisputed Fact 16), instead of bringing a FED action. This constitutes forcible entry under Oklahoma law. *See Ramirez*, 730 P.2d at 517-18 ("If one enters into the possession of another against the will of him whose possession in invaded, however quietly he may do so, the entry is forcible in legal contemplation.") (footnote omitted)). Therefore, the Court finds that Defendant failed to comply with the mandatory FED procedure required by Oklahoma statute.

## Conclusion

In accordance with the foregoing, Plaintiff's motion for partial summary judgment, Doc. No. 56, is GRANTED in part and DENIED in part. The Court finds as a matter of law that ONSY failed to comply with the mandatory FED procedure required by Oklahoma statute. The motion is denied in all other respects.

IT IS SO ORDERED this 19th day of June, 2015.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE